IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

AMBER COLSTON, individually and on behalf of all others similarly situated; WILLIS BRAMWELL, individually and on behalf of all others similarly situated; and ROSEANN BLESSING, individually and on behalf of all others similarly situated;

Plaintiffs,

vs.

AMERITAS HOLDING COMPANY, THE BOARD OF DIRECTORS OF AMERITAS HOLDING COMPANY, THE AMERITAS 401(K) RETIREMENT PLAN COMMITTEE, and JOHN DOES 1-30,

Defendants.

**4:23CV3137**

**MEMORANDUM AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint (Filing No. 11) filed by Ameritas Holding Company, the Board of Directors of Ameritas Holding Company, and the Ameritas 401(k) Retirement Plan Committee, (collectively, "Defendants"). Plaintiffs oppose Defendants' motion and assert that they state plausible claims for relief for breach of the duties of plan fiduciaries under ERISA, the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*

For the reasons set forth below, Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint (Filing No. 11) is granted.

**STATEMENT OF FACTS**

Plaintiffs, Amber Colston, Willis Bramwell, and Roseann Blessing, are participants in the Ameritas 401(k) Retirement Plan (the "Plan"). Plaintiffs filed this putative class-action suit against Ameritas Holding Company ("Ameritas"); its Board of Directors (the "Board") and its members; and the Ameritas 401(k) Retirement Plan Committee (the "Committee") and its members, for their alleged mismanagement of the defined-contribution plan.

To benefit eligible employees, Ameritas Holding Company sponsors the Plan, a "defined contribution plan" (or "individual account plan") as defined by ERISA, 29 U.S.C. § 1002(34). (Filing No. 1, ¶¶ 40.) In a defined contribution plan, participants' retirement benefits are limited to the value of their individual accounts, which is determined by employee contributions, plus any investment gains, and less investment expenses. (Filing No. 1, ¶ 34, 42-43); *See* 26 U.S.C. § 414. The Eighth Circuit has explained the mechanics of this type of plan. *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 277–78 (8th Cir. 2022). Retirees' benefits depend on the choices made by two groups of people: "the plan managers, who decide on the mix of investments offered and the costs of participating; and the participants themselves, who select how much to invest and where." *Barrett v. O'Reilly Auto., Inc.,* 112 F.4th 1135, 1137–38 (8th Cir. 2024).

Plaintiffs assert a claim under ERISA Sections 409(a) and 502(a)(2), 29 U.S.C. § 1109(a) and 1132(a)(2), alleging that the Ameritas 401(k) Retirement Plan Committee ("Committee") breached the fiduciary duties of prudence and loyalty by causing or allowing the Plan to pay excessive fees for services provided under the Annuity Contract. (Filing No. 1, ¶¶81-88.)

The investment platform for the Plan is the Ameritas Group Annuity Contract ("Annuity Contract") issued by Ameritas Life Insurance Corp. ("ALIC"). (Filing No. 13-2). ALIC establishes, maintains, and provides services for three accounts in which participants may invest. (Filing No. 13-2, pp 8-17.) Plan participants who invested in these accounts are given the option to receive their benefits in the form of a guaranteed annuity contract. (Filing No. 13-2, pp 18-20.) The Complaint alleges that at the Plan's fiscal year end in 2021 and 2020, the Plan had over $779 million dollars and $708 million dollars, respectively, in assets under management. (Filing No. 1, ¶10.) Plaintiffs allege that in 2016 and 2017, only .1 percent of 401(k) plans in the country had between $500 million and $1 billion in assets under management. *Id*. Plaintiffs assert that given its large size, the Plan had "substantial bargaining power regarding the fees and expenses that were charged against participants' investments." (Filing No. 1, ¶10.)

Plaintiffs allege that the Defendants acted contrary to the actions of a reasonable fiduciary, breaching the duties of prudence and loyalty, and costing the Plan and its participants millions of dollars. (Filing No. 1, ¶ 12). Retirement plans with annuitization features tend to have higher fee structures. (Filing No. 1, ¶62). Plaintiffs generally allege that the Defendants allowed the Plan to pay excessive asset-based fees to ALIC (Filing No. 1, ¶61), and that the Defendants failed "to

objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and performance." (Filing No. 1, ¶11.) They seek a variety of forms of relief, including actual damages dating back to July 27, 2017, disgorgement of profits, and an injunction "from any further violations" by Defendants "of their ERISA fiduciary responsibilities, obligations, and duties." (Filing No. 1 at 1 n1, 26-28).

Defendants moved to dismiss (Filing No. 11) the Complaint and argue that the Plaintiffs failed to state a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6). They argue that Plaintiffs' claims are premised "entirely on speculation regarding fees the Plan *might* have been charged rather than on factual allegations regarding the fees that the Plan *was* charged." (Filing No. 11 at 1).

Plaintiffs specifically point to two fees authorized by the Annuity Contract which they claim are excessive, although the Annuity Contract does not set a specific fee for either. First, they challenge the contract management charge, which Plaintiffs contend is a total asset-based charge and applies to all assets in the Plan. (Filing No. 1, ¶61-64). The Annuity Contract provides as follows:

> A contract management charge is a charge by [ALIC] based on each Participant Investment Account, the Non-Vested Funds Account and the Unallocated Account. The charge is determined based on an annual percentage rate applied to the accumulated value in each of those accounts. The applicable percentage rate will be declared by [ALIC] as of the beginning of each calendar year with respect to contracts in this class. **This rate shall not exceed 2.50% annually.** The charge will be pro-rated on a daily basis during the calendar year and billed to and paid directly by the Employer.

(emphasis added). (Filing No. 13-2 at 8). Thus, the contract management charge is determined annually based on a percentage of the assets in each of the three accounts and cannot exceed 2.5%.

The Complaint also contests ALIC's investment management expenses as excessive. (Filing No. 1, ¶65.) The Annuity Contract provides that investment management expenses are

> deducted by the Company from the total value of [each account] attributable to this class of contracts, based on a percentage of the value of such assets. **This charge is based on a percentage rate determined by the Company, not to exceed .50% annually.** The charge will be pro-rated on a daily basis during the calendar year and deducted as of each Valuation Date.

(emphasis added). (Filing No. 13-2 at 9). Investment management expenses apply to two of the three accounts in which participants could invest and cannot exceed .5% annually.

The Complaint alleges that *if* the actual contract management charge and investment management expenses were half of the 2.5% and .5% maximum allowed under the Annuity Contract, the Plan would have paid a total of $10,560,000 in 2021 alone. (Filing No. 1, ¶64). Plaintiffs compare the hypothetical potential amounts of the annuity contract management charge and investment management expenses to several other fees for services paid by the Plan. For example, the Plan entered into a recordkeeping contract with UNIFI in 2008, and under this prior contract, one component of the fee was $35,000 in 2017. (Filing No. 1, ¶ 71). In 2011, UNIFI became an affiliated entity of Ameritas and by 2021 ALIC and/or its affiliates was the recordkeeper and charged a fee of $110,685 for these services. (Filing No. 1, ¶ 71). The Complaint acknowledges that these itemized fees in question do not encompass all services necessary for the Plan, such as accounting fees and legal fees, but alleges that such services "would not make up the remainder of the nearly $10M or more taken by Ameritas and/or its affiliates." (Filing No. 1, ¶ 72). However, it notes that some of the "the investment management fees are already paid for by the underlying mutual funds." (Filing No. 1 at ¶76).

To demonstrate the unreasonableness of the fees, Plaintiffs compare their estimation of the Plan's contract management charge and investment management expenses to figures in a report[1] of average total 401(k) plan costs in 2019, published by Brightscope/Investment Company Institute ("ICI study"), and based on aggregated data. (Filing 1, ¶66). They specifically look at data from the report regarding all plans managing between $500 million and 1 billion in assets. They allege that "[c]omparing the Plan's charges under the Annuity [C]ontract to total plan costs of comparably-sized plans is a useful exercise because it shows that the Annuity [C]ontract throughout the Class Period charged nearly three times more for Plan services than the average plan its size." (Filing No. 1, ¶67). Defendants assert that this report is not a meaningful benchmark against which to weigh the Plan's fees, because, inter alia, it is not a "like-for-like comparison" because it does not include crucial details of the plans included in its 2019 averages, such as the

[1] *The Brightscope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2019* Ex. 4.1, p. 49. (September 2022), https://www.ici.org/system/files/2022-09/22-ppr-dcplan-profile-401k.pdf.

investment structure or strategies of the plans, the number of participants, or the services provided. (Filing No. 12 at 14); *See Matousek*, 51 F.4th at 279.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id. at 679*.

In deciding a Rule 12(b)(6) motion, courts may not consider matters outside the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). However, documents "necessarily embraced" by the complaint are not matters outside the pleadings and may be considered without converting the motion into one for summary judgment. *Id.*

## DISCUSSION

### 1. Breach of fiduciary duties

ERISA imposes two primary duties on fiduciaries: loyalty and prudence. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ..." 29 U.S.C. § 1104(a)(1). ERISA plan fiduciaries like the Defendants also owe plan participants a duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). This duty includes a "duty to monitor trust investments and remove imprudent ones" which is "separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).

In the context of "a defined-contribution plan where participants choose their investments," that duty of prudence requires plan fiduciaries to "conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022). Fiduciaries also have "a continuing duty ... to monitor investments and remove imprudent ones." *Id.* at 177 (quoting *Tibble*, 575 U.S. at 530). Fiduciaries are required to act "with prudence, not prescience." *Usenko v. MEMC LLC*, 926 F3d 468, 473 (8th Cir. 2019). Accordingly, the relevant inquiry into whether a fiduciary acted prudently "focuses on the information available to the fiduciary at the time of the relevant investment decision." *Id.* Courts also "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

"To state a claim for breach of fiduciary duty, 'a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Meiners*, 898 F.3d at 822 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). In light of the pre-discovery challenge in gaining information about a fiduciary's decision-making process, plaintiffs may plead an ERISA imprudence claim by using "data about the selected funds and some circumstantial allegations about methods to show that 'a prudent fiduciary in like circumstances would have acted differently.' " *Id.* (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 720 (2d Cir. 2013)); *See also Braden*, 588 F.3d at 598 (explaining "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences"). "Because the content of the duty of prudence turns on 'the circumstances ... prevailing' at the time the fiduciary acts, 29 U.S.C. § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific." *Hughes*, 595 U.S. at 177 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014))

For an investment-by-investment challenge to a retirement plan's fees, a complaint cannot simply make a bare allegation that costs are too high, or returns are too low. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020). The key to nudging an inference of imprudence from possible to plausible is providing "a sound basis for comparison—a meaningful benchmark." *Matousek*, 51 F.4th at 278. In this regard, this Court has acknowledged that the motion-to-dismiss stage demands the Court "strike a meticulous balance in analyzing ERISA claims," and that stating a plausible ERISA imprudence claim takes "obvious complexity" to clear

the pleading bar. *Fitzpatrick v. Nebraska Methodist Health Sys., Inc.*, No. 8:23CV27, 2024 WL 6977298, at *7 (D. Neb. Sept. 20, 2024). Thus, a plaintiff must allege enough facts to "*infer* ... that the process was flawed." *Davis*, 960 F.3d at 482-83 (quotation marks omitted).

**II. Duty of prudence**

Turning to Plaintiffs' first claim that the Plan's expenses were excessive, after carefully applying the principles above and accepting the well-pleaded factual allegations as true, the Court finds that the Complaint falls short in pleading any meaningful benchmarks for the Plan. In this case, "the composition[s] of the" comparator funds largely remain a "mystery," and the Complaint is not sufficient to draw any inference of imprudent management. *See Matousek*, 51 F.4th at 281 (quoting *Meiners*, 898 F.3d at 822).

Plaintiffs specifically claim that Ameritas could have paid itself or its affiliates as much as $9 or $10 million per year for the contract management charge and investment management expenses. (Filing No. 1, ¶66, 68). However, this figure is purely speculative; it is an estimate based on the *maximum* percentage of assets (2.5% and .5% respectively) authorized under the Annuity Contract. (Filing No. 13-2 at 8; Filing No. 13-2 at 9). The plausibility standard on a motion to dismiss is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

The Complaint also lacks factual allegations from which the Court could infer the Plan's expenses were unreasonable or out of line with similar annuity plans of similar sizes and offering similar services. Plaintiff offers as comparison that, according to the ICI study, the average total plan cost for a 401(k) plan with assets between $500 million and $1 billion was .45 % of assets in 2009 and .37% in assets in 2019. (Filing No. 1, ¶ 66). However, the benchmark offered by the Plaintiffs – the ICI study – is not particularly meaningful for several reasons.

First, the comparison relies on speculation about the Plan's costs; as discussed above, the Complaint fails to draw any inference about the actual amount of the costs under the Annuity Contract. (Filing No. 1, ¶66). The conjecture offered in the Complaint does not show or allow the Court to infer Ameritas' actual expenses or expense ratio. There is no way to tell whether an excessive-fee claim is plausible without a way to "make a 'like-for-like' comparison," and it is impossible to make any comparison where the facts pled regarding Plan costs are hypothetical and

conclusory. *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139 n2 (8th Cir. 2024) (quoting *Matousek*, 51 F.4th at 279).

Second, rather than identifying fees paid by other specific, comparably sized plans with similar services, the Plaintiffs rely on industry-wide averages. *See Matousek*, 51 F.4th at 279–80. But such averages are not all-inclusive: they measure the cost of the typical "suite of administrative services," not anything more. *Id.* The ICI study does not show a detailed account of services received for the expenses incurred. "Even if stock index funds will typically outperform a variable annuity," such as the annuity investment options in this case, "it is not imprudent to provide options with differing features from which to choose, regardless of whether some perform better than others." *See Davis*, 960 F.3d at 485.

The Eighth Circuit recently decided a similar case for ERISA fiduciary imprudence in which the plaintiffs had relied on aggregate data from the Investment Company Institute – the same type of data underpinning Plaintiffs' Complaint. *See Barrett*, 112 F.4th at 1140. *Barrett* reiterated that a plaintiff's conclusory assertion that purported comparators are a meaningful benchmark is not sufficient; courts in the Eighth Circuit must evaluate the comparator to determine whether it is a comparison of comparators with a similar bundle of services. *Barrett*, 112 F.4th at 1140. The ICI study pleaded by the Plaintiffs, like the ICI study pled in *Barrett*, shows only that the Plan pays higher-than-average costs for a 401(k) plan. But the Barrett Court rejected the benchmark as not meaningful, and explained,

> What is missing is any explanation of what was aggregated or "the criteria used to sort" the plans and the investments within them. *Matousek*, 51 F.4th at 281. "With so little information, we have no way of knowing whether [the aggregated data] provide a sound basis for comparison." *Id.* (citation omitted); *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1155 (10th Cir. 2023) ("A comparison to median expense ratios in broad investment strategy categories, without more, does not provide the 'meaningful benchmark' necessary to satisfy a plaintiff's pleading burden ....").

*Barrett*, 112 F.4th at 1140.

At the motion to dismiss stage the Court accepts as true the ICI study's findings as alleged, but need not accept as true Plaintiffs' legal conclusion that the study serves as a meaningful benchmark against which to weigh the Defendants' actions. *See Riley v. Olin Corp.*, No. 4:21-CV-01328-SRC, 2022 WL 2208953, at *6 (E.D. Mo. June 21, 2022). The ICI study relied upon by the Complaint fails similarly as a basis for comparison for the Complaint. It does not identify cost

structures of individual plans, or the services included. Ultimately, it does not "connect the dots in a way that creates an inference of imprudence." *See Matousek*, 51 F.4th at 282.

Plaintiffs attempt to distinguish *Barrett* by claiming that the Complaint compares the potential fees for claim it is comparing fees paid to ALIC for contract management charge and investment management expenses to other negotiated fees paid for other services, such as recordkeeping and advisory services. (Filing No. 23). However, this comparison between the cost of different services is unhelpful when the amount of the contract management charge and investment management expenses are speculative. In the absence of "significant allegations of wrongdoing," *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014), the way to plausibly plead a claim of this type is to identify similar plans offering the same services for less. *Matousek*, 51 F.4th at 279 (citations omitted). Plaintiffs have not cleared this pleading bar. Without a meaningful benchmark for comparison, Plaintiffs did not create "a plausible inference that the decision-making process itself was flawed." *See Matousek*, 51 F.4th at 280.

In addition to *Barrett*, other courts have dismissed claims that relied on industry averages reported by Brightscope/ICI as a benchmark for various investment categories. *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136 (10th Cir. 2023); *Seibert v. Nokia of Am. Corp.*, No. CV 21-20478 (ES) (AME), 2023 WL 5035026 (D.N.J. Aug. 8, 2023); *McCaffree Fin. Corp. v. ADP, Inc.*, No. CV205492ESJRA, 2023 WL 2728787 (D.N.J. Mar. 31, 2023); *Perkins v. United Surgical Partners Int'l Inc.*, No. 3:21-CV-00973-X, 2022 WL 824839 (N.D. Tex. Mar. 18, 2022); *In re LinkedIn ERISA Litig.*, No. 5:20-CV-05704-EJD, 2021 WL 5331448, (N.D. Cal. Nov. 16, 2021); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293 (D. Minn. 2021); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020). These courts generally reason that because the medians and averages from aggregate data do not distinguish between actively and passively managed accounts, this data does not inform the court about a specific and similarly-situated investment option, and it is insufficient on its own to serve as a benchmark to plausibly allege imprudence. There are no specific allegations in Plaintiffs' Complaint that suggest that the ICI study may provide a meaningful benchmark in the instant case.

Accordingly, Plaintiffs did not match any benchmark by asserting the bare allegation that cheaper alternative investments with some similarities exist in the marketplace. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 n7 (8th Cir. 2009). Plaintiffs' Complaint did not plausibly

plead a claim for breach of the duty of prudence, and it is insufficient to withstand a motion to dismiss.

**I. Duty of loyalty**

The Complaint next alleges generally that Defendants breached their duty of loyalty by acting with an eye toward their own interests instead of Plan participants' interests. (Filing No. 1 ¶ 61). In their briefs, Plaintiffs explain that "there seems to be no other explanation for why the estimated amount of half of the 2.5% charge, or more than $10M, is being taken by Ameritas and/or its affiliates other than to enrich the coffers of Ameritas and/or its affiliates." (Filing No. 17 at 9). Plaintiffs claim that Ameritas and/or its affiliates and/or third parties were paid for annuity contract management fees, annuity investment management expenses, actuarial services and similar reports. (Filing No. 1, ¶61). However, Plaintiffs' claim fails for the same reason as above; the Complaint did not successfully plead that the charges for these services were excessive or improper in the first place.

ERISA's duty of loyalty requires a fiduciary to act "solely in the interest" of the Plan's participants and for the "exclusive purpose" of providing benefits and defraying reasonable plan administration expenses. 29 U.S.C. § 1104(a)(1)(A). *See also Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (Section 1104(a)(1) imposes "strict standards of trustee conduct ... derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care").

In the Eighth Circuit, ERISA plaintiffs cannot simply repackage imprudence allegations as a disloyalty claim to circumvent the pleading standard. *Dormani v. Target Corp*., 970 F.3d 910, 917 (8th Cir. 2020). Here, in the absence of any well-pled factual allegations that Defendants acted imprudently as fiduciaries, the Court cannot draw an inference that Defendants acted out of improper motives. Courts "cannot reasonably infer they acted out of a motive to seed underperforming or inordinately expensive funds if [the Complaint] has not plausibly pled that those funds were, in fact, underperforming or inordinately expensive." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018). The mere fact that a fiduciary had an interest adverse to those of plan participants does not by itself state a claim for relief. *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1058 (D. Minn. 2009). Even assuming that Defendants benefit from some fees paid to its affiliates, there are no facts in the Complaint that would suggest that ALIC

acted with an eye toward these Ameritas' entities' interests instead of Plan participants' interests. This claim again relies on speculation as to the amount of the contract management charge and investment management expenses. (Filing No. 1, ¶64). Plaintiffs did not plausibly plead a claim for fiduciary disloyalty, and this claim will be dismissed.

### II. Duty to monitor investments

Plaintiffs also claim that Ameritas and the Board Defendants breached their fiduciary monitoring duties to ensure that the Committee Defendants were adequately performing their fiduciary obligations. As discussed above, plan fiduciaries also have "a continuing duty ... to monitor investments and remove imprudent ones." *Hughes v. Northwestern Univ.*, 595 U.S. 170, 172 (2022) (quoting *Tibble*, 575 U.S. at 530). However, "[w]ithout 'a plausible inference that the decision-making process itself was flawed,' this derivative claim must also be dismissed. *See Barrett*, 112 F.4th at 1140 (quoting *Matousek*, 51 F.4th at 282.

Therefore, Defendants' motion to dismiss is granted. The Complaint (Filing No. 1) is dismissed with prejudice[2]. *See Barrett*, 112 F.4th at 1140-41.[3]

Dated this 8th day of September, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

[2] The Court has considered the informal request to amend the Complaint found at the end of Plaintiffs' brief opposing the Defendants' motion. (Filing No. 17). Although litigants are "freely give[n] leave" to amend, *see* Fed. R. Civ. P. 15(a)(2), they still must "follow [the] proper procedures," *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014). The Court will deny the Plaintiffs' request because Plaintiffs made no formal request to amend and no amended complaint was attached to the informal request. See *Barrett v. O'Reilly Auto., Inc.,* 112 F.4th 1135, 1140–41 (8th Cir. 2024); See also NECivR 15.1(a)